THE STATE, EX REL. ROBERT B. INGRAM, v. THE BOARD OF STREET AND WATER COMMISSIONERS OF JERSEY CITY.

Argued February 24, 1899—Decided May 12, 1899.

By the Veteran act of March 14th, 1895, an honorably-discharged Union veteran, against whom no charges have been preferred, and who has not made any special contract as to his term of service, has the right to hold a position to which he has been lawfully appointed, and its emoluments, during good behavior, subject nevertheless to discharge, removal or termination of service as such employe whenever governmental changes in structure, method, management or policy, *bona fide* for the public interest, might necessarily require or result in such removal, discharge or termination of service.

---

On rule to show cause why *mandamus* should not issue.

Before Justices DIXON and LUDLOW.

For the relator, *Corbin & Corbin.*

For the defendants, *Allan L. McDermott.*

The opinion of the court was delivered by

LUDLOW, J.   The evidence shows that the relator was duly appointed by resolution of the Board of Street and Water Commissioners of Jersey City, July 23d, 1894, approved by the mayor, to the position of " Engineer in charge at High Service " in the water department of said city from August 1st, 1894, term of service not fixed, salary to be $100 per month, and free living apartments at the pumping-station for himself and family.

Mr. Ingram, when thus appointed, was an honorably-discharged Union veteran of the late War of the Rebellion, having enlisted in the naval service of the United States in 1861— June 15th—and by reason of subsequent disability being honorably discharged January 25th, 1862.

He held the said position in the Jersey City water department under his said appointment until October 18th, 1897, on which day the following resolution was passed by the Board of Street and Water Commissioners of Jersey City : " *Resolved,* That the position designated as Engineer in charge at High Service be and is hereby abolished, and that the services of R. B. Ingram, at present the incumbent of this position, be and are hereby dispensed with." It does not, in terms, assign any reason for said action of the board.

This abrupt action of the board was a surprise to the relator.   He at once protested against it as in violation of his rights as an honorably-discharged Union veteran under the Veteran act.   The board refused to reinstate him, and without any explanation of their action referred him to the courts, and hence this rule to show cause on the part of Mr. Ingram, the relator.

By the Veteran act of March 14th, 1895 (*Pamph. L., p.*

317; *Gen. Stat., p.* 3702), the relator, who is proved to be an honorably-discharged Union veteran, against whom no charges have been preferred, according to said act, and who has not made any special contract as to his term of service, had the clear right to hold the said position, to which he was lawfully appointed, and its emoluments, during good behavior, subject always, however, to discharge, removal and termination of service as such employe whenever governmental changes in structure, method, management or policy, *bona fide* for the public interests of Jersey City, might necessarily require or result in such removal, discharge or termination of service. But he could not be removed from said position for political reasons, and said position could not be abolished, nor could the name or title of it be changed, nor could the emoluments of it be reduced for the purpose of terminating his service as such employe.

The resolution of the 18th day of October, 1897, unexplained by the said board as to the intent, object or purpose thereof, by its own terms clearly indicates two distinct purposes of the board—first, the abolishment of the position designated as " Engineer in charge at High Service;" second, to dispense with, conclude and terminate the service of R. B. Ingram, who was the then incumbent of said position. The board offers no explanation. The position being under the control of the board, they could designate it whatever they pleased and as they pleased, but the duties to be performed are permanent and continuing at the station at High Service —in charge—requiring constant presence, actual occupancy of, living in the station building; the responsibility of the proper conduct of the station, of the care of the machinery there; the keeping it in good working order and regularly watched; the fitting of water-pipes, the general oversight of the station work, in a word, being the head, or leader, or chief of the engineer force at High Service at that station made this position of engineer in charge at High Service (the name or title given to it was of no moment). The duties, work, responsibilities, requirements of service and pay

constitute a position to be filled by the board's appointment, and that position in fact was never abolished by the board.

It remained after the resolution of October 18th exactly as it had been before. The water system of Jersey City required it; it is a necessity there. The resolution of October 18th, 1897, did not abolish that position. It really had no such purpose or intent, and the facts show it. Immediately after this resolution one Carpenter, an engineer at High Service, one of the engineer force formerly under relator, Ingram, was advanced by the board to that very same position; and he moved with his family into the station building, and thereafter held, and continued to hold, and discharged and performed all of said duties and work of that position, the same as the relator had done; but, seemingly, he kept it under his pay-roll title of " Engineer at High Service," the old title of "Engineer in charge at High Service" having been abolished by said resolution of October 18th, 1897. To hide, as far as possible, from discovery or observation the actual purpose of the resolution and to suggest and stimulate the thought of economy, Carpenter's name was, for the time being, kept on the pay-roll as " Engineer at High Service " at his then salary of $77 per month, but by a regular monthly additional allowance for extra work made to him the amount of his monthly pay was tided along at figures quite satisfactory. That the engineer force might not be reduced by Carpenter's taking the said chief position, another engineer at High Service was added, so as to give the force its usual required strength. The resolution of October 18th, 1897, the purpose of which being made clear from the subsequent facts disclosed in the case, ought not to be sustained. It was merely a bold venture, in defiance of the Veteran act of 1895, to displace and get rid of a Union veteran in order to bestow the position which he lawfully held upon another, more favored man.

The rule to show cause in this matter should be made absolute, and a peremptory *mandamus* should issue to reinstate the relator in his said position, with costs.